[No. A045502. First Dist., Div. One. Aug. 22, 1990.]

LEWIS C. ON et al., Plaintiffs and Appellants, v.
COW HOLLOW PROPERTIES et al., Defendants and Respondents.

**COUNSEL**

Barton S. Selden for Plaintiffs and Appellants.

Joel D. Adler for Defendants and Respondents.

**OPINION**

NEWSOM, J.—In a second appeal of this case, Lewis C. On (hereafter appellant) challenges an award of $88,784.88 in attorneys' fees to Cow Hollow Properties, a partnership, Lloyd Wiborg, Martin Davis, Patrick Short, and James Curran (hereafter collectively Cow Hollow).[1]

On November 10, 1981, appellant filed a complaint in the San Francisco Superior Court against Cow Hollow seeking specific performance of a real estate purchase agreement dated September 8, 1981. Cow Hollow responded by filing a cross-complaint against On and two other defendants seeking damages for wrongful filing of a lis pendens relating to the action. Both complaint and cross-complaint were later amended and duly answered by the opposing parties.

In a statement of decision filed April 16, 1984, the court found for Cow Hollow, both as defendant to the complaint and as cross-complainant.

---

[1] The notice of appeal lists two grounds of appeal that do not relate to attorneys' fees: (1) No proper calculation of Cow Hollow's damages has ever been made, and (2) On was entitled to a continuance of the original trial in this action in order to obtain trial counsel. The first has no apparent relevance to the appeal and was not raised in the briefs; the second was stricken as a ground of appeal by order of the court dated January 23, 1990.

Ruling that Cow Hollow was also entitled to attorneys' fees, the statement of decision referred to Cow Hollow as cross-complainant but, as we will note later, articulated grounds for awarding the fees that would actually apply to Cow Hollow as defendant to the complaint itself. The judgment on the cross-complaint, filed nunc pro tunc as of May 2, 1984, awarded Cow Hollow $324,435.50 in compensatory damages, plus damages of $363.90 per day until the lis pendens was expunged. The judgment included "attorneys fees and costs incurred by cross-complainants in an amount to be determined by the Court upon application by cross-complainants, . . ." Pursuant to this directive, the parties filed a stipulation that Cow Hollow could recover from appellant $50,000 in attorneys' fees. Like the judgment, the stipulation referred to Cow Hollow as cross-complainant.

On appeal, this court reversed the judgment on the cross-complaint. The opinion acknowledged: "[T]he record reveals more than a frivolous lawsuit and an abuse of judicial process; the appellant's claim of relief is based wholly on the intentional misrepresentation . . . ." Nevertheless, the court concluded that the filing of the lis pendens was privileged under Civil Code section 47, thus barring the claim for compensatory damages in the cross-complaint.

Upon remand to the trial court, appellant contended that the reversal of the judgment on the cross-complaint invalidated the award of attorneys' fees to Cow Hollow as cross-complainant. Cow Hollow countered that language awarding attorneys' fees to it as cross-complainant was a clerical error; it remained entitled to attorneys' fees as the successful defendant to the complaint. Accepting Cow Hollow's position, the court set aside the stipulated attorney's fees of $50,000 and stated that it would "entertain a motion" for a "determination of a reasonable fee . . . ." In response to Cow Hollow's application, the court determined that Cow Hollow was entitled to attorneys' fees of $88,784.88, and entered a judgment in this amount.

Appellant contends, first, that the trial court erred in refusing to credit against the award of attorneys' fees the sum of $60,000 paid under a bond it posted as a condition to maintaining the lis pendens in this action. The record reveals that Cow Hollow moved to expunge appellant's lis pendens shortly after appellant filed this action. On February 23, 1982, the trial court denied the motion on the condition that appellant "file [a] bond in the amount of $60,000.00 pursuant to Code of Civil Procedure section 409.1(b)." After securing a judgment on the cross-complaint, Cow Hollow received full payment on the bond.

In refusing to credit the $60,000 against the award of attorneys' fees, the court reasoned that a lis pendens bond filed by a plaintiff is available for

payment only of "damages resulting directly from the non-expungement of the lis pendens." Such damages, the court ruled, did not include the defendant's attorney's fees. We find the premise mistaken. ■ A successful defendant can in fact recover attorneys' fees to which it is entitled from a lis pendens bond filed by a plaintiff. We look first to the purpose of the statute.

Code of Civil Procedure sections 409.1 and 409.2[2] both give the court discretion to require the defendant to post a bond as a condition for expungement of the lis pendens. In such cases, the purpose of the bond is clear: it allows the defendant to dispose of the property subject to suit while remaining capable of responding in damages to the plaintiff's claim. But section 409.1 also gives the court discretion to require the plaintiff to post a bond as a condition to denying a motion for expungement of the bond. In such a case, the purpose of the bond is more obscure. If it has any utility, the bond must benefit the defendant. But under *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], the defendant cannot recover damages from the plaintiff for slander of title resulting from filing of the lis pendens. The defendant moreover cannot recover on the bond for damages unrelated to the filing of the lis pendens. (*Elder* v. *Carlisle Ins. Co.* (1987) 193 Cal.App.3d 1313 [238 Cal.Rptr. 897].) Nor can the bond be reserved for payment of damages in a subsequent action for malicious prosecution; the undertaking on the bond cannot extend beyond the period that the lis pendens is in effect, that is, beyond final judgment in the action. (Hertzberg & Regele, Cal. Lis Pendens Practice (Cont.Ed.Bar 1983) § 4.1, p. 121.) The bond would in fact have limited and uncertain value if the defendant could not use it to collect attorneys' fees and costs in the successful defense of the action. Consequently the statutory authority to require the plaintiff to post the bond will ordinarily best serve the legislative purpose of benefiting the defendant if he is allowed to use it to collect attorneys' fees.

■ Attorneys' fees may be recovered as an element of damages from bonds posted on the issuance of preliminary injunctions (*Allen* v. *Pitchess* (1973) 36 Cal.App.3d 321, 327 [111 Cal.Rptr. 658]; *Russell* v. *United Pacific Ins. Co.* (1963) 214 Cal.App.2d 78, 89 [29 Cal.Rptr. 346]), attachments (*Mart, Inc.* v. *National Auto. & Cas. Co.* (1967) 250 Cal.App.2d 772, 774 [58 Cal.Rptr. 877]), and stop notices (*Flintkote Co.* v. *Presley of Northern California* (1984) 154 Cal.App.3d 458, 464 [201 Cal.Rptr. 262]; *Systems Inv. Corp.* v. *National Auto. & Cas. Ins. Co.* (1972) 25 Cal.App.3d 1057, 1061 [102 Cal.Rptr. 378]). The same considerations should apply here. The statutory language regarding a preliminary injunction bond is especially close to that applying to a lis pendens bond. Under section 529, the applicant for a preliminary injunction may be required to post a bond "to the

---

[2] All reference to code sections is to Code of Civil Procedure unless otherwise indicated.

effect that the applicant will pay to the party enjoined such damages . . . as the party may sustain by reason of the injunction, if the court finally decides that the applicant was not entitled to the injunction." Section 409.1, subdivision (b) provides that the lis pendens bond may be "to the effect that such prevailing party will indemnify the other party for all damages which he may incur if he ultimately prevails in the action."

We conclude that, since attorneys' fees are recoverable under a lis pendens bond, the amount Cow Hollow has recovered under the bond should be credited against the award of attorneys' fees.

■ Appellant next advances a series of objections to the award of attorneys' fees under Civil Code section 1717. Citing the rule that judicial errors may not be corrected after entry of judgment, he contends that the court had no jurisdiction to alter the original judgment which awarded attorneys' fees to Cow Hollow as cross-complainant. (See 7 Witkin, Cal. Procedure (3d ed. 1985) § 66, p. 500.) But the statement of decision reasoned that Cow Hollow could recover attorneys' fees under "the document of September 8, 1981," i.e., the real estate purchase agreement. Since the significance of this agreement was adjudicated under the complaint, not the cross-complaint, it is clear that the court intended to award attorneys' fees to Cow Hollow for successful defense of the complaint. The language of the judgment awarding attorneys' fees to Cow Hollow as cross-complainant was plainly an inadvertent clerical error that the court was empowered to correct under section 473.

Appellant contends that Cow Hollow never obtained a ruling that it was the prevailing party as required by Civil Code section 1717. In fact, the order for attorneys' fees stated explicitly that Cow Hollow was entitled as the prevailing party to attorneys' fees under Civil Code section 1717. The ruling was correct. ■ Civil Code section 1717 establishes a policy of mutuality of remedy. (*Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83].) If appellant had succeeded in enforcing the real estate purchase agreement, the contract provisions would have entitled it to attorneys' fees. Civil Code section 1717 gave Cow Hollow the reciprocal right to recover attorneys' fees upon successfully proving that the agreement was unenforceable. (*Jones* v. *Drain* (1983) 149 Cal.App.3d 484, 486 [196 Cal.Rptr. 827].)

■ Three further contentions can be answered briefly. (1) For the first time on appeal, appellant claims that Cow Hollow is estopped to claim more than the $50,000 attorneys' fees stipulated after the entry of the initial judgment. In the trial court, however, appellant himself moved to set aside the stipulation. He cannot now claim estoppel. (2) Appellant also maintains

for the first time on appeal that Cow Hollow is barred by laches from claiming attorney's fees, but he fails to point to any inordinate delay in the eight-month period between the remand of the case and entry of the court's order for attorneys' fees. (See 9 Witkin, Cal. Procedure (3d ed. 1985) § 311, p. 321.) (3) Appellant misreads this court's previous opinion as holding "that attorneys' fees are a moot point once the judgment on the cross-complaint was reversed." The opinion merely stated that it did not rule on the issue of attorneys' fees.

 In a further assignment of error, appellant argues that the trial court erred in basing the award of attorneys' fees alternatively on section 128.5. The question has some practical importance because the court relied on section 128.5 to include in the award certain costs lying outside the scope of Civil Code section 1717.

As amended in 1985, section 128.5, subdivision (a) provides: "Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay." The trial court found: "Clearly, defendants attorneys' fees are awardable as reasonable expenses which were included as a result of plaintiff On's filing of the complaint in bad faith. Grounds for such bad faith are detailed in this court's Statement of Intended Decision." Pointing out that the statute applied disjunctively to either bad faith actions or frivolous tactics, the court concluded that it need not consider the further question whether appellant engaged in such frivolous tactics.

Appellant raises five objections. First, he objects that the trial court based its ruling on the current version of section 128.5 but referred to the statement of decision, written before the 1985 amendments, in support of its ruling. We see no difficulty here. The statement of decision contained a detailed development of the facts that amply supported the court's finding that the action was brought in bad faith.

Secondly, he complains that the court erred in basing sanctions solely on a finding that the action was in bad faith. But the use of the disjunctive in section 128.5, we think, clearly indicates that sanctions can be based either on a finding of a bad faith action or "tactics that are frivolous or solely intended to cause unnecessary delay." In any event, the facts of the case as described in the statement of decision bring it within the category of a "frivolous action" as defined in such decisions as *Atchison, Topeka & Santa Fe Ry. Co.* v. *Stockton Port Dist.* (1983) 140 Cal.App.3d 111, 117 [189 Cal.Rptr. 208], *Karwasky* v. *Zachay* (1983) 146 Cal.App.3d 679, 681 [194

Cal.Rptr. 292], and *Lesser* v. *Huntington Harbor Corp.* (1985) 173 Cal.App.3d 922 [219 Cal.Rptr. 562].

Thirdly, he points to his success in resisting pretrial motions to expunge the lis pendens as rebutting the court's finding that the action was brought in bad faith. But we attach no significance to these provisional rulings issued before the introduction of evidence at trial.

Fourthly, he asserts that the trial court did not "recite in detail the conduct or circumstances justifying the order" as required by section 128.5, subdivision (c). But, in fact, the court incorporated by reference the statement of decision which contained a very careful exposition of facts leading to the conclusion that appellant was guilty of "outrageous conduct" as well as "fraud, concealment, deceit and shockingly unethical conduct."

Fifthly, he contends that he did not have proper notice of a claim for attorneys' fees under section 128.5. We note, however, that the application for attorneys' fees listed section 128.5 as an alternative ground for attorneys' fees, and appellant argued the relevance of the statute in his opposition to the application.

Lastly, appellant challenges the amount of the award of attorneys' fees. We see no merit in the claim that the trial court failed to make a proper determination of the reasonableness of the fees. ■ " ' "An appellate court can only interfere with the decision of the trial court as to what constitutes reasonable attorney's fees where there has been a plain and palpable abuse of discretion." ' " (*Shannon* v. *Northern Counties Title Ins. Co.* (1969) 270 Cal.App.2d 686, 688 [76 Cal.Rptr. 7].) ■ Cow Hollow submitted detailed supporting documentation in its application for attorneys' fees. The trial court's order reflects a finding as to the reasonableness of the fees that we find no reason to question on appeal.

Similarly, we reject the contention that the trial court should have apportioned all of Cow Hollow's legal expenses between prosecution of the cross-complaint and defense of the complaint, including only the latter in the award. The record supports the trial court's finding that "the services rendered by the defense attorneys in using fraud to defend against the complaint and using fraud as an action under the cross-complaint were essentially one and the same. Thus, the attorneys' fees calculated for the complaint could appropriately include these cross-complaint fees."

A more difficult issue is presented by two items that related exclusively to the cross-complaint: (1) $2776.50 for drafting and filing the pleadings on cross-complaint and (2) $18,651.53 for enforcement of the judgment on the

cross-complaint.[3] Cow Hollow concedes that these items may not be awarded as attorneys' fees in defense of the complaint under Civil Code section 1717, but argues that the court's authority to impose sanctions under section 128.5 is broad enough to allow their inclusion in the award.

■ Unlike most similar statutory provisions, section 128.5 authorizes the award of attorneys' fees as a sanction to control improper resort to the judicial process. The statute permits the award of attorneys' fees, not simply as appropriate compensation to the prevailing party, but as a means of controlling burdensome and unnecessary legal tactics. The enacting legislation states: "It is the intent of this legislation to broaden the powers of trial courts to manage their calendars and provide for expeditious processing of civil actions by authorizing monetary sanctions now not presently authorized by the interpretation of the law in Bauguess v. Paine (1978), 22 Cal.3d 626."[4]

Consistent with this legislative purpose, the trial court is not required to make a "strict accounting" of expenses in imposing the sanctions. (See *In re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1421, fn. 1 [257 Cal.Rptr. 850].) *Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1438 [240 Cal.Rptr. 297], holds: "It should be noted that in the matter of an award of attorneys fees under CCP § 128.5, the court is not bound in its determination by such traditional factors as hours consumed, statements mailed, results attained, and the like. Such an award for attorneys fees is not the subject of a 'strict accounting' as might be required in other areas of the law such as in the administration of trusts and estates." The holding recognizes implicitly that section 128.5 should be construed to effectuate the legislative purpose of controlling bad faith and frivolous litigation.

The pertinent language of section 128.5, subdivision (a) authorizes the award of attorney's fees "incurred by another party *as a result of* bad-faith actions . . . ." (Italics supplied.) Construing this language broadly in light of the legislative purpose of the statute, we conclude that it requires no more than a causal relationship between the offending legal action and the expenses incurred by the opposing party. ■ That relationship can be

---

[3] In his brief, appellant also objects to the inclusion of $24,039.50 "in post-trial fees and costs" that he claims were spent in "recording and enforcing the now-reversed judgment on the cross-complaint, and in negotiations toward its settlement." But we do not find that the record clearly supports this characterization of the expenses. In the absence of a record that affirmatively shows error, the order will not be disturbed on appeal. (9 Witkin, Cal. Procedure, *supra*, § 418, pp. 415-416.)

[4] A recent decision denying postjudgment attorney's fees, *Chelios* v. *Kaye* (1990) 219 Cal.App.3d 75 [268 Cal.Rptr. 38], has no relevance to the present case as it concerns section 685.040, a provision with quite distinct language and legislative purposes.

found here. The filing of the cross-complaint was occasioned solely by the filing of appellant's bad faith complaint; if appellant had not filed the complaint, Cow Hollow would have lacked not only the incentive but the the factual basis to pursue its claim on the cross-complaint. Therefore, the expenses incurred in prosecuting the cross-complaint were "as a result of" the filing of appellant's complaint within the meaning of the statute. The trial court rightly observed, "[a]s a result of plaintiff's bad-faith action in filing the complaint, defendants incurred expenses in building a defense, a part of which was done by filing a cross-complaint that also contained elements of the defense to the complaint."

The judgment is modified to allow attorneys' fees of $28,784.88. The parties bear their own costs on appeal.

Racanelli, P. J., and Stein, J., concurred.